CHARLES MERRILL, administrator,

*vs.*

INHABITANTS OF NORTH YARMOUTH.

Cumberland.    Opinion April 7, 1886.

*Contributory negligence.    Ways.*

It is settled law in this state that, in an action against a town to recover damages for the death of a person alleged to have been caused by the negligence of the town in not keeping one of its ways in repair, the burden of proof is upon the plaintiff to show due care on the part of the deceased. A person undertook to drive with a horse and pung over a road, across which

was flowing at the time a stream of water thirty or forty rods wide, and in some places not less than three feet deep, with a current moving at the rate of five miles an hour, and carrying upon its surface cakes of ice, some of which were twenty-five or thirty feet in diameter; at some stage of his journey, and in some way, he and his horse got out of the road and were precipitated into the deeper channel of the river below and drowned. *Held,* that one who knowingly and unnecessarily exposes himself to such perils can not be regarded as in the exercise of due care.

ON EXCEPTIONS.

An action on the case for negligence brought under the provisions of R. S., c. 18, § 80, for damages for the loss of the life of plaintiff's intestate, Oliver B. Corliss late of New Gloucester, on the twenty-seventh day of March, 1884, by reason of an alleged defect in a county way within the limits of the defendant town.

The opinion states the material facts.

*Woodman and Thompson,* for the plaintiff, contended that the condition and appearance of the overflow, as it was approached by the deceased, was not such as to excite apprehension and that the places and condition in which the horse and pung, the contents of the pung and the body of the deceased were afterwards found, all indicated that when the danger appeared the deceased took the eggs, pung seat and robe out of the pung and placed them on a cake of ice, and attempted to turn around and go back. That all of these things indicated the exercise of care. That the deceased was not to be charged with contributory negligence because he did not look ahead from the edge of the overflow to a dangerous place of which he had no knowledge. It was enough that he attempted to return when the dangerous place was reached, and counsel contended that he would have undoubtedly succeeded if there had been a suitable railing as required in *Spaulding* v. *Winslow,* 74 Maine, 528.

This theory is a reasonable one, warranted by the undisputed facts, and it was for the jury to pass upon. *Weeks* v. *Parsonsfield,* 65 Maine, 286.

"The fact that a person takes some risk is not conclusive evidence under all circumstances, that he is not using due care."

*Lawless* v. *R. R. Co.* 136 Mass. 1; *Crumpton* v. *Solon,* 11 Maine, 337. See also *Mayor* v. *B. & M. R. R. Co.* 104 Mass. 142; *Hill* v. *Seekonk,* 119 Mass. 85; *Thompson* v. *Bridgewater,* 7 Pick. 189; *Horton* v. *Ipswich,* 12 Cush. 488; *Mahoney* v. *Metropolitan R. R.* 104 Mass. 73.

*Symonds and Libbey,* for the defendants.

WALTON, J. This is an action to recover damages for the death of a person, caused, as is claimed, by the negligence of the defendant town in not keeping one of its highways in repair. At the trial the presiding judge directed the jury to return a verdict for the defendants. The question is whether this direction was correct. We think it was. It is now the settled law of this state, that, in such an action the burden of proof is upon the plaintiff to show due care on the part of the deceased. *State* v. *Railroad,* 76 Maine, 357; *Lesan* v. *Railroad,* 77 Maine, 87.

It is the opinion of the court that in the present case this burden is not sustained; that, on the contrary, the evidence establishes a clear case of contributory negligence.

The deceased lost his life by drowning. No one witnessed the accident; but the evidence is such as to leave no doubt that he undertook to drive with a horse and pung over a road across which was flowing at the time a stream of water thirty or forty rods wide, and in some places not less than three feet deep, with a current moving at the rate of five miles an hour, and carrying upon its surface cakes of ice some of which were twenty-five or thirty feet in diameter; and that, at some stage of his journey, and in some way, he and his horse got out of the road and were precipitated into the deeper channel of the river below and drowned.

Surely, one who knowingly and unnecessarily exposes himself to such perils can not be regarded as in the exercise of due care. We say knowingly, for this accident happened in broad day light, about the middle of the forenoon, when the deceased could see not only the extent of the overflow, but the proximity of the river, and the want of a railing or other means of protection, to enable him to keep the road and prevent his being washed away

by the current. And there was nothing in the nature of a trap. The deceased was familiar with the road. He had passed over it twice the day before. Although seventy-eight years of age, he appears to have been in the full possession of his mental faculties, and blessed with good eyesight. All the dangers of the situation must therefore have been known to him. And he seems to have braved them unnecessarily. A mother who rushes in front of an approaching engine to save the life of her child has an excuse for her rash act. One who, in great peril, jumps from a carriage, may be excused for so doing. One who rushes into a torrent of water to rescue one who is drowning may be said to act under a moral necessity. But no such mitigating circumstance appears in this case. The deceased was going from his home, not toward it, so that the ordinary anxiety one feels when away from home to return to it, could not have influenced him. And so far as appears his only business was to market a few eggs, and no necessity for haste in the performance of that duty is shown. He was not therefore impelled to go forward by any overwhelming necessity. The act seems to have been voluntary and wholly unnecessary, and with a full knowledge of the dangers to be encountered. Surely, a verdict finding due care on his part could not be allowed to stand. The direction to the jury to return a verdict for the defendants was therefore correct. *Heath* v. *Jaquith*, 68 Maine, 433, and cases there cited.

This conclusion renders it unnecessary for the court to express an opinion as to whether the town was or was not guilty of negligence in not raising the road so as to render an overflow impossible; or whether [as the plaintiff's counsel contend] it was remiss in not providing a railing to prevent travellers, who should attempt to use the road when overflowed, " from being swept to their death." It is sufficient to say that the road was in the same condition in which it had been " from time whereof the memory of man runneth not to the contrary," and that no accident had ever before happened, and that this one would not have occurred if the deceased had used that degree of caution which his neighbors used; for those who approached the place that morning turned back, and did not attempt to go through,

and no one of the witnesses pretends that he would have attempted to drive through when the deceased did ; or that he ever knew a person to drive through when the water was as high as it was then ; and however careless it may have been for the town to leave the road in a condition in which it was liable to be over-flowed, and without a railing to catch travelers who might be washed out of it ; still, its condition was as well known to the deceased as to any other inhabitant of the town. He had passed over the road twice the day before. And if it was careless in the town to allow it to remain in that condition, it must have been equally careless in him, knowing its condition, voluntarily and unnecessarily, to attempt to use it ; so that the two negligences combined to produce the accident ; in which case it is well settled that a recovery can not be had.  *Lesan* v. *Railroad*, 77 Maine, 87, and cases cited.

*Exceptions overruled.*

PETERS, C. J., VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.